UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA PARKER,

   Plaintiff,        Case No. 2:15-cv-14365

v.             HONORABLE STEPHEN J. MURPHY, III

EQUIFAX INFORMATION SERVICES,
LLC,

   Defendant.

                  /

## OPINION AND ORDER DENYING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT [25]

Plaintiff Linda Parker filed a proposed class complaint against Defendants Equifax

Information Services, LLC and Wilson Technologies, Inc. for alleged willful violations of the

Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* Parker voluntarily dismissed

her claims against Wilson Tech, and has moved for leave to amend her complaint. The

Court held a hearing on February 7, 2017.

### BACKGROUND

Parker tried to buy a vehicle from Suburban Cadillac Buick, an auto dealership for

which Wilson Tech provides "technical and retail support," identity-verification services, and

retail and sales management. ECF 25-2 ¶¶ 8–9, 17. She received a copy of her "credit

report"[1] from Equifax—a consumer reporting agency—and discovered that Wilson Tech

---

[1] Equifax has addressed Parker's references to her "credit report" and Wilson Tech's "inquiries" to underscore a preference for statutorily defined terms over colloquial ones. Equifax argues—and the Court will presume—that Parker claims she received a consumer disclosure from Equifax, 15 U.S.C. § 1681g(a)(1), and that Wilson Tech obtained a consumer report about Parker from Equifax, 15 U.S.C. § 1681a(d)(1). *See* ECF 25-2 ¶ 20 (alleging that Equifax "provided a consumer report" to Wilson Tech), ¶ 37 (defining class as persons to whom Equifax "issued consumer disclosures" after Wilson Tech accessed their "consumer reports"). Indeed, the statutorily defined term "consumer report" has legal significance, so courts must "look at the contents of the reports themselves to assess

"made two inquiries" about her credit without her permission. *Id.* ¶ 11–12. Wilson Tech

denied that it accessed the report, and stated that the dealership verified Parker's identity

using Wilson Tech's "automated system." *Id.* ¶ 15–16.

Parker asserts by implication that the "automated system" utilized two Equifax

products: (1) a subscription to "eIDcompare," a tool that verifies personal information for

legal and regulatory compliance, and generates alerts for possible instances of identity

theft; and (2) a subscription to "[Office of Foreign Assets Control (OFAC)] Alert Services,"

which verifies consumers by automatically screening new and existing accounts, cross-

checking its database when a credit report is requested, and issuing a notice that the data

was verified against the database. *Id.* ¶¶ 30–31. The eIDcompare product, in particular,

receives from its subscribers data packets that include fields for a consumer's name, phone

number, social security number, date of birth, driver's license, current address, and time

spent at that address. *Id.* ¶¶ 23–24. Parker alleges that Wilson Tech purchased the

eIDcompare and OFAC Alert Services "in relation to [her] and a class of all other persons

similarly situated." *Id.* ¶ 26.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should "freely give

leave" for a party to file an amended complaint "when justice so requires." District courts

can, however, deny a motion for leave to amend on the basis of "undue delay, bad faith or

dilatory motive . . . [or] futility of amendment." *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437,

---

whether they reach the threshold established in 15 U.S.C. § 1681a(d)(1), rather than
determining in a conclusory manner that something is a 'consumer report' based upon the
parties' idiosyncratic and self-serving nomenclature." *Bickley v. Dish Network, LLC*, 751
F.3d 724, 729 n.4 (6th Cir. 2014).

445 (6th Cir. 2007) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Amending would

be futile if a proposed amendment would not survive a motion to dismiss." *SFS Check, LLC*

*v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014). Accordingly, the proposed

amended pleading must "raise a right to relief above the speculative level" and "state a

claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603,

609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

## DISCUSSION

In the proposed amended class complaint, Parker has abandoned her claim against

Wilson Tech and added a claim against Equifax under § 1681g(a), which requires a

consumer reporting agency to provide to consumers clear and accurate consumer

disclosures. ECF 25-2, PgID 102–03. Parker argues that the amendment accounts for two

possible alternatives:

(1)  Equifax provided a consumer report and disclosed the middle-man
(Wilson Tech) but failed to disclose the end-user as required by 15
U.S.C. § 1681g(a)(3); or

(2)  Equifax provided a false consumer disclosure to Plaintiff by disclosing
that  a consumer report was provided to Wilson Tech when it was not,
in violation of § 1681[g](a).

ECF 31, PgID 183. Parker seeks further discovery to "ascertain exactly what information

was reported and to whom, if at all," because without the information she "cannot

reasonably determine which of the two possible alternatives is at play." *Id.* at 184. Equifax,

on the other hand, maintains the amendment is futile and unjustly prejudicial.

I.    15 U.S.C. § 1681g(a)(3): "Reporting" Claims

Parker's proposed amended complaint alleges that Equifax violated § 1681g(a)(3).

That section requires a consumer reporting agency to "disclose to the consumer . . .

3

[i]dentification of each person (including each end-user identified under section 1681e(e)(1) of this title) that procured a consumer report—(i) for employment purposes, during the 2-year period preceding the date on which the request is made; or (ii) for any other purpose, during the 1-year period preceding the date on which the request is made."

Parker alleges that the Equifax products to which Wilson Tech subscribed, eIDcompare and OFAC Alert Services, could provide significant biographical information about consumers, and Parker further alleges the general features and capabilities of the products. *See* ECF 25-2 ¶ 24, ¶¶ 30–33 (listing the products' various capabilities). She claims that Wilson Tech has a customer ID from Equifax for both products, used eIDcompare to verify consumers for its subscribers, and purchased both products from Equifax "in relation to [Parker] and a class of all other persons similarly situated." *Id.* ¶¶ 25–29. But Parker does not allege that Equifax produced specific information about Parker to Wilson Tech. Parker simply alleges that "Equifax provided Wilson Tech[] with header data, yet Equifax disclosed to Ms. Parker and the class members that it had disclosed a consumer report." *Id.* ¶ 59.

The allegation that Wilson Tech purchased the products "in relation to" Parker and her proposed class fails to allege willful, impermissible conduct. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (noting that willful action entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known"). Parker submits general allegations about the *capabilities* of Equifax's products and Wilson Tech's status as a subscriber, but she falls short of plausibly claiming that "Wilson Tech actually used eIDcompare to do anything with respect to her except obtain her 'header' information for the purpose of verifying her identity." *See* ECF 28 PgID 146–47 (emphasis omitted). In

4

other words, Parker failed to identify the necessary connection between the products' general capabilities and the specific manner in which they were used here.

Even assuming that Parker alleged Equifax had provided all the personal information that eIDcompare had the *capacity* to exchange, *see* ECF 25-2 ¶ 24, and that Wilson Tech actually used it, Parker's proposed amended complaint did not allege that providing the information constituted a consumer report. To trigger the disclosure-identification requirements of § 1681g(a)(3), Parker must allege that Equifax provided a consumer report to Wilson Tech. Parker, however, does not allege facts sufficient to raise her claim to relief above simple speculation that Equifax provided Wilson Tech with a consumer report.

The accumulation of biographical information from Equifax's products does not constitute a consumer report because the information does not bear on Parker's credit worthiness. The Sixth Circuit acknowledged that "header information" does not qualify as a consumer report, but that court has not expressly defined what the content of header information may be. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 729 (6th Cir. 2014). While the Sixth Circuit did not define header detail in *Bickley*, the term must refer to biographical information. Few courts expressly define "header data", but the concept certainly includes some combination of name (and aliases), address, change in address, date of birth, phone number, and social security number. *See e.g. Thompson v. Equifax Credit Information Serv., Inc.*, No. 00–D–1468, 2001 WL 34142847, at *1–*2 (M.D. Ala. Dec. 14, 2001); *Dotzler v. Perot*, 914 F.Supp. 328 (E.D. Mo. 1996), *aff'd without opinion*, 124 F.3d 207 (8th Cir. 1997); *Trans Union Corp. v. F.T.C.*, 81 F.3d 228 (D.C. Cir. 1996). The data at issue here reflects biographical information generally recognized as header data and, thus, is not a consumer report.

A report that conveys a consumer's "Echostar Risk number"—generated based on the number of consumer-initiated credit inquiries during a 12-month period—is a consumer report. *Bickley*, 751 F.3d at 729. By inference, therefore, any information that displays a score communicating a consumer's credit worthiness must not be merely header data. *Id.* And Federal Trade Commission guidance supports that inference. *See* Commentary on the Fair Credit Reporting Act, 16 C.F.R. Part 600 App. at 548 (1990) (noting that information bearing on at least one of the seven characteristics listed in the statutory definition, 15 U.S.C. § 1681a(d)(1), is necessary to qualify a disclosure as a consumer report).[2]

Here, Parker alleges that Equifax's products allow companies like Wilson Tech to obtain substantial amounts of biographical information. And depending on context, header data may well function effectively as a consumer report. For example, if a consumer reporting agency groups the header data based on particular credit-related criteria, the dissemination of that data may constitute a consumer report. *See Trans Union Corp. v. F.T.C.*, 81 F.3d 228, 229–30 (D.C. Cir. 1996) (noting that Trans Union "used special criteria to cull [names and addresses] from its database" allowing any buyer of the data to know "that the persons named satisfy the specified criteria"). But Parker does not allege that Equifax communicated a score similar to an "Echostar Risk number" to Wilson Tech or otherwise organized the information by criteria bearing upon the seven statutory characteristics of a consumer report. The proposed amended complaint is bereft of any of those types of allegations. And the allegations therefore fail to raise her right to relief

---

[2] In 2011, the FTC rescinded all of its guidance interpreting the FCRA because the Consumer Financial Protection Bureau ("CFPB") assumed agency responsibility for the statute. The CFPB, however, has not issued guidance related to the disputed statutory portions of the FCRA.

"above the speculative level", *Twombly*, 550 U.S. at 555. The amendment in this regard is futile.

Parker seeks discovery to determine facts about her two proposed scenarios and to "ascertain exactly what information was reported and to whom, if at all." ECF 31, PgID184. But the "doors" of discovery are not "unlocked" for "a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). And Parker "cannot use discovery to obtain specific facts necessary to craft" a plausible proposed amended complaint, "even when the information needed to establish a claim . . . is solely within the purview of the defendant or a third party." *Life For Relief & Dev. v. Charter One Bank, N.A.*, No. 12-CV-13550, 2013 WL 3810255, at *3 (E.D. Mich. July 23, 2013) (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011)).

Parker has failed to plead in her proposed amended complaint "enough facts to state a claim to relief that is plausible on its face" under section 1681g(a)(3). *Twombly*, 550 U.S. at 555, 570. Attempts to "proceed to discovery simply by making bare allegations that the defendants violated the law," *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (citing *Iqbal*, 556 U.S. at 695), are not sufficient. The motion as to the reporting claims must be denied.

II.    <u>15 U.S.C. § 1681g: "Disclosure" Claims</u>

Parker's proposed amended complaint includes an alternative claim that Equifax failed to provide a clear and accurate disclosure under 15 U.S.C. § 1681g(a)(1). That section provides, in pertinent part, that "[e]very consumer reporting agency shall, upon request, . . . *clearly and accurately* disclose to the consumer [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1) (emphasis added). A

7

legal standard for assessing the type of claim alleged here has not been developed by the

Sixth Circuit and the Plaintiff does not offer a standard by which the Court may review

whether a disclosure was "clear and accurate" within the meaning of § 1681g. ECF 31,

PgID 184–85.[3] Parker has therefore failed to allege sufficient facts to raise her claim above

the speculative level because Equifax clearly and accurately disclosed the information

contained in Parker's credit file within the meaning of § 1681g.

Parker does not allege that the disclosure failed to clearly and accurately provide her

with all the information that Equifax had in her file. Rather, Parker alleges that the credit

report contained misinformation and constituted a "false disclosure." ECF 31, PgID 184.

While neither party disputes the completeness of the credit report that Equifax provided to

Parker, the statutory language regarding accurate disclosures does not require a consumer

reporting agency to produce or maintain credit reports that are free from error. The

statutory requirement that the disclosure "accurately" reflect "[a]ll information in the

consumer's file at the time of the request" merely prohibits the consumer reporting agency

from manipulating information in a consumer's credit report. Finding otherwise could

transform the FCRA into a strict liability statute. And when interpreting other provisions of

the FCRA, the Sixth Circuit has rejected the idea of reading the statute so strictly. *See*

*Nelski v. Trans Union, LLC*, 86 F. App'x. 840, 844 (6th Cir. 2004) ("[T]he FCRA does not

---

[3] Only the Seventh Circuit has addressed the "clearly and accurate language set forth in § 1681g. *See Gillespie v. Equifax Info. Serv., LLC*, 484 F.3d 938, 941 (7th Cir. 2007). In a persuasive, but non-binding, that court determined that a "primary purpose of the [FCRA's] statutory scheme" in the section "is to allow consumers to identify inaccurate information in their credit files and correct this information . . . ." *Gillespie*, 484 F.3d at 941. The court explained that clear and accurate disclosures must "make an accurate disclosure of the information in the consumer's credit file" and make the disclosure in "a manner sufficient to allow the consumer . . . to determine the accuracy of the information set forth in [the] credit file." *Id.*

impose strict liability for incorrect information appearing on an agency's credit reports.").

Moreover, the FCRA provides a distinct remedy for inaccurate reports; from that fact, it may

be inferred that Congress did not intend to impose upon consumer reporting agencies a

requirement of error-free credit reports. *See* 15 U.S.C. § 1681e.

Second, the disclosure here was clear. Parker successfully requested disclosure of

her credit report, received all information that Equifax maintained in her file, and, upon

review of the credit report, made the determination that there were alleged inquiries into her

credit that she did not recognize. The clarity requirement for disclosures to consumers does

not require error-free credit reports, but does require that the credit report be clear enough

for a consumer to compare the report to her own files and to challenge any potential errors.

Equifax's credit report here allowed Parker to dispute the information set forth in her file.

And the credit report therefore complied with the FCRA.

Because Equifax "clearly and accurately disclose[d]" to Parker "[a]ll information in the

consumer's file at the time of the request," Equifax complied with the FCRA as a matter of

law and Parker's proposed amended complaint would be futile. Parker has not stated a

claim upon which relief may be granted.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plainitff's Motion for Leave to Amend

Complaint [25] is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III

Dated:  September 12, 2017      United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 12, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager